Entered: August 28, 2006
Signed: August 28, 2006
**SO ORDERED**



NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at BALTIMORE

| | | | |
|---|---|---|---|
| In Re: | * | | |
| COLLEEN, INC. | * | Case No. | 06-13748-NVA |
| | * | Chapter | 11 |
| | * | | |
| Debtor | * | | |
| ************************************ | * | | |
| FOOD KING, INC.; BERNARD MEIZLISH, | * | | |
| and HERBERT E. BECKENHEIMER AND | * | | |
| DT&T FOOD, INC. | * | | |
| Movants | * | | |
| vs. | * | | |
| COLLEEN, INC. | * | | |
| | * | | |
| | * | | |
| Respondent | * | | |

**MEMORANDUM OF DECISION GRANTING EMERGENCY MOTIONS FOR
RELIEF FROM STAY[26], [32]**

Before the Court are two Emergency Motions for Relief from the Automatic Stay which were brought and heard as emergencies (companion motions for expedited treatment were filed and granted).[1] The motions were filed on July 11, 2006 and July 12, 2006, answers were filed by the

---

[1] Orders [36] and [38] granting the motions for expedited/emergency consideration were entered on July 13, 2006.

1

Debtor on July 20, 2006, and the Court held a duly noticed evidentiary hearing on the matters on July 26, 2006. The evidentiary hearing was concluded in its entirety, and the record closed on July 26, 2006. Obviously, the Court rules on that record and not on what may have come after it. The Court points this out because the Debtor undoubtedly would like the evidence in this proceeding to be a shifting landscape. The Debtor would like the Court to consider events expected to occur <u>after</u> the hearing was over, but about which the Debtor presented no evidence at the hearing. As defense to the lift stay actions, Debtor argued that it hoped to package and sell the subleases to which the lift stay motions pertain, and that the Debtor might be close to having an agreement with a prospective buyer to purchase a number of the Debtor's subleases. No testimony or other evidence was presented about the Debtor's marketing efforts or the prospective sale. In fact, the Debtor presented no evidence at all in defense of the Motions. The Movants presented the testimony of witnesses and admitted numerous exhibits.

     Certainly, the Debtor would have preferred to have had its sale prospects more advanced at the time of the lift stay hearing. In fact, the next day, the Debtor placed on the docket in the bankruptcy case a document [54] purporting to be a signed contract of sale. The Debtor later (after the hearing) filed papers [59] and [61] proposing to "assume," "assign," and sell subleases (including Movants' subleases) at an auction sale with a stalking horse bidder. The Court understands that the facts, circumstances, and evidence might be materially different if a later lift stay motion is heard by the Court, and the outcome of the litigation may differ substantially. In such future case, the Debtor may be able to put on evidence with respect to a sale, and offer "adequate protection" to the movant as a defense to stay relief. Here, the Debtor did virtually nothing to defend. The Court relies on the record it was provided, and grants relief from the stay. The Court realizes, regrettably, that the effect of this ruling is likely to be the removal of several subleases from a pool of subleases which may be sold at auction.

The "lift stay" motions at issue were brought by Food King, Inc., Bernard Meizlish, and Herbert Beckenheimer (collectively, "Food King")[2] and DT&T Food, Inc. ("DT&T")[3] (together, "Movants"). Food King and DT&T operate grocery stores in which the Debtor is a sublessee and operated check cashing services.[4] The Food King and DT&T lift stay motions seek relief from the automatic stay of section 362 of the Bankruptcy Code to permit the Movants to terminate their respective subleases with the Debtor at their four stores. Three of these are Food King store locations[5] and one is a DT&T location.[6] The Debtor filed a three page answer to each motion[7] in which it did little more than admit or deny the allegations of the motions and raise the possibility that the Debtor may sell the subleases to a third party, after they are "assumed" by the Debtor and "assigned" to a third party purchaser.

At the hearing, Movants presented two witnesses, and admitted nine documents into evidence. The Debtor presented no witnesses, no exhibits, and no evidence at all. Global Express

---

[2] On July 11, 2006, Food King, Inc., Bernard Meizlish, and Herbert Beckenheimer filed an Emergency Motion [26] for Relief from Stay and Notice of Motion Relating to Sublease Agreements of 3400 Annapolis Road, 6206 Security Boulevard, and 5700 Wabash Avenue. Bernard Meizlish and Herbert Beceknheimer are the "sub-landlord" for the Annapolis Road sublease. The other subleases are between Food King, Inc. and Colleen, Inc. only.

[3] On July 12, 2006, DT&T filed an Emergency Motion [32] for Relief from Stay and Notice of Motion Relating to Sublease Agreement of 517 South Broadway.

[4] The Movants testimony bore out that its customer base, generally, do not have checking accounts or credit cards. In addition to check cashing services, the Debtor also offered bill paying services, money orders, lottery tickets, bus passes, pre-paid telephone cards, and, wire transfer services.

[5] The Food King Motion seeks leave to terminate the Debtor's subleases at: (1) 3400 Annapolis Road, Baltimore, Md. 21227; (2) 6206 Security Boulevard, Baltimore, Md. 21207; and (3) 5700 Wabash Avenue, Baltimore, Md. 21215.

[6] The DT&T Motion seeks leave to terminate the Debtor's sublease at 517 South Broadway, Baltimore, Md. 21231.

[7] The Debtor's Answers ([49] and [50]) were filed on July 20, 2006.

3

Money Orders, Inc. ("Global Express"), purporting to be the Debtor's only secured creditor, appeared through counsel, ostensibly to support the Debtor's position, but, likewise, did not present any evidence.

At the hearing, Movants presented the testimony of Bernard Meizlish, the President of Food King, Inc., and Melvin Shapiro, the Vice-President of DT&T Foods, Inc., and admitted exhibits in conjunction with their testimony. Messrs. Meizlish and Shapiro were highly credible witnesses. The evidence establishes as follows: The Debtor ceased operating its check cashing business at all 20 of its former business locations (including Movants' four locations) on June 23, 2006, and filed a voluntary Chapter 11 petition on June 28, 2006. The Maryland Department of Labor, Licensing and Regulation issued a cease and desist order to the Debtor on June 29, 2006, directing the closure of the Debtor's operations. That "cease and desist" order remains in effect and, as a result, the Debtor is legally unable to operate.[8] The Debtor's operations have remained closed since June 23, 2006. Movants' subleases with the Debtor contain clauses making it a term of default for the Debtor to "go dark" in Movants' locations for more than seven days (the "continuous use clauses").[9] The subleases also contain (at Paragraphs 20) provisions requiring the businesses operating in the subleased space to be owned by Alec Satisky[10] and Brian Satisky, the owners of the Debtor.[11]

---

[8] *See* Paragraphs 7 of the lift stay motions [26] and [32] and corresponding admissions in Paragraphs 7 of the Debtor's Answers [49] and [50].

[9] The documents referred to herein as the "subleases" are formally titled Sublease Agreements and were entered by and between the Debtor and Food King on January 21, 1999 (Movants Exh. 1-6) and with DT&T on June 8, 2005. (Movants Exh. 7).

[10] Alec Satisky committed suicide on or about June 27, 2006.

[11] Paragraph 20 of the sublease agreements provides:

"Sub-Tenant" may not assign this "Sublease Agreement" or sublet all of the "Sub-Leased Premises." At all times during the term hereof all of the issued and outstanding shares of stock of "Sub-Tenant" are required to be owned solely by Brian

4

Movants' businesses are adversely affected by their customers not having the ability to cash checks and obtain money orders on site, and Movants have suffered monetary losses during the weeks the Debtor's check cashing operations have been shut down.  The Movants desire to identify as soon as possible a "quality" and "experienced" check cashing operation to replace the Debtor's defunct operations and, accordingly, seek to lift the stay with respect to Debtor's unexpired subleases so that they may do so.  Movants seek to get their locations back.

In support of their motions, Movants presented several arguments.  First, Movants contended that the subleases were *de facto* terminated by Debtor's breach of the continuous use clause in the subleases (*i.e.,* Debtor failed to operate for seven consecutive business days).  Second, Movants argued that the sublease agreements are in the nature of personal service contracts that may not be assumed.[12]  In addition, Movants argued that the Debtor has not (or cannot) maintain its burden to meet the requirements of Section 365(b)(1).  Section 365(b)(1) requires that for the Debtor to assume an unexpired lease (or sublease), the Debtor must cure any defaults, compensate the lessor for any pecuniary injury, and provide adequate assurance of future performance.  Movants also argued that the Debtor failed to provide adequate protection under Section 362.

The Debtor countered that it had been in bankruptcy for less than a month, and that it had spoken with as many as six prospective purchasers who have expressed an interest in acquiring ten or more of the Debtor's subleases.  The Debtor submitted that an offer was reduced to writing, but

---

Satisky and/or Alec Satisky, and any change in the ownership so that any share of stock in "Sub-Tenant", is not owned solely by Brian and/or Alec Satisky shall be deemed to be prohibited assignment of this "Sublease Agreement" by "Sub-Tenant", except that an assignment of the ownership of the stock of the "Sub-Tenant" may be assigned or gifted to the spouse or children of Alec Satisky and/or Brian Satisky and will not be considered a violation of this Paragraph of this "Sublease Agreement".

See Sublease Agreement, Movants' Exhs. 1, 3.

[12] See Id.

5

conceded that no contract had been signed.[13] The Debtor represented that it intended to have the agreement signed and presented to the Court, and to solicit other and higher offers through bidding procedures to be approved by the Court.[14] The Debtor conceded that it had not made any post-petition payments on its obligations to Movants, but represented that the Debtor holds in excess of $500,000 in a debtor-in-possession account at Wachovia Bank, in which Global Express purportedly holds a perfected security interest.[15] The Debtor said that it plans to request that Global Express agree to make funds available to pay post-petition rents to the Movants. Significantly, no such request seemed yet to have been made or granted.

Global Express argued through counsel that it holds a security interest in all of the assets of the Debtor. Counsel reported that Global Express' managing partner is negotiating with prospective purchasers and is "currently" showing a group of prospective purchasers around the Debtor's locations. Counsel conceded, however, that nothing was reduced to writing as of the time of the hearing. Global Express posited, again through counsel, that as these locations remain vacant, customers go elsewhere and the locations become less valuable. Global Express argued that if the Court grants relief from the stay, the value of the assets will be lost from the estate. Global Express' counsel stated that although there exist sufficient funds to pay the Debtor's post-petition obligations

---

[13] According to Debtor's counsel, but without any evidence, the contract originally had offered $400,000 for ten locations (including two of the Food King Locations and the one location operated by DT&T). The $400,000 offer was reduced to $240,000 for ten of the Debtor's locations: 2135 W. Patapsco Ave.; 106 N. Howard St.; 6836 Resisterstown Road; 3107 W. North Ave.; 6206 Security Blvd. (Food King); 517 S. Broadway (DT&T); 3801 Eastern Ave.; 5700 Wabash Ave (Food King); 2439 Frederick Avenue; and 5106 Ritchie Highway. The offer, purportedly, was for the subleases, equipment and good will of the Debtor.

[14] Again, the Court notes that <u>subsequent</u> to the close of the July 26, 2006 hearing, the Debtor filed papers seeking to sell substantially all the Debtor's subleases [59], [61].

[15] Curiously, Debtor's counsel represented that the account is under the control of Howard Getlan, Esq., attorney for Brian Satisky. Mr. Getlan acts as the escrow agent.

6

to Movants, as of the hearing date, counsel for Global Express did not have authority to authorize payment of funds as adequate protection payments or otherwise.

In the world of commercial landlords and their debtor tenants (or subtenants), tension exists in the Bankruptcy Code between the provisions of Sections 362 and 363 on the one hand, and the provisions of Section 365 on the other hand.  Commercial landlords want continuous rent payments and frequently want the right to re-let the premises quickly to satisfactory paying tenants who are reliable and fit any "tenant mix" requirements or profile.  Accordingly, they frequently want stay relief under Section 362, or to be provided with adequate protection (payments).  As a result, they file lift stay motions and enforce their rights to have them heard by the court within 30 days.  In addition, if they recognize that the debtor may "assume" unexpired leases under Section 365, then landlords want the cure payments they must receive for assumption under that Section, and adequate assurance of performance in the future.

On the other hand, a debtor may want to assume and assign their leasehold rights under Section 365, and sell them to third parties under Section 363.  Of course, such a debtor would need to meet the requirements of those sections and in typical circumstances (as here) would also need to ward off a landlord's lift stay action under Section 362.

Acute tension exists where (as here) the landlord wants stay relief on an exigent basis and is prepared to present evidence to demonstrate lack of adequate protection and eroding business, while the debtor wants more time to shop a deal to sell the (sub)leases, but has no evidence to present at hearing that a sale will occur or that a deal has been reached, or that adequate protection has been provided.

Courts have taken various approaches when a landlord seeks relief from the automatic stay in the face of this tension.

> The majority of bankruptcy courts to consider the issue has [sic] concluded,

7

using different rationales, that lessors are entitled to relief from stay under section 362(d)(1). Often relevant has been the threshold determination whether, at the time of bankruptcy filing, there was a lease that could be assumed pursuant to section 365 or whether the debtor's rights under the lease were terminated prepetition. If the lease was terminated, courts have readily granted relief from stay. Even if the lease was not terminated prior to bankruptcy filing, some courts have granted relief from stay because the lessors lacked adequate protection. Relief from stay under section 362 may also be granted when the lease has been rejected pursuant to 11 U.S.C. § 365.

Many of these cases have undertaken a traditional application of section 362(d)(1) and have simply assumed that the lessor is a "party in interest" under that section. However, other bankruptcy courts have not been comfortable in relying solely on 362(d)(1) and have looked to sections 363(e) and 365 in determining the lessor's rights. For example, some courts have relied upon section 363(e) to require adequate protection of the lessors interest.

Other courts, in recognition of the policies underlying the debtor's right to assume or reject an unexpired lease under section 365, have resolved the conflicting interests of debtor and lessor by setting a deadline for the assumption or rejection of the lease under section 365(b)(1).

Finally, there is a line of cases which holds that sections 362 and 363 have no applicability whatsoever to unexpired leases. These decisions, upon which the debtors in the case at bar rely, suggest that a lessor's exclusive remedies are under section 365 of the Bankruptcy Code....

In re Borbidge, 66 B.R. 998, 1000-01 (Bankr. E.D. Pa. 1986) (internal citations omitted).

As the court in Borbidge points out, under each of Sections 361, 362, 363, and 365, a debtor who seeks to use property of another must provide that entity with adequate protection. Under Section 362(d)(1), the court is required to grant relief from the automatic stay if the debtor does not provide adequate protection for the creditor's interest in the property. Under Section 363(e), the court is required to prohibit or condition the use of property by a debtor as is necessary to provide the creditor, or lessor, with adequate protection of that interest.[16]

---

[16] Section 363(e) provides:

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or

8

This Court begins its analysis with Section 362(d) of the Bankruptcy Code, which sets forth grounds for relief from the automatic stay:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay  -
>
> (1) for cause, including lack of adequate protection[17] of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if
>
> (A) the debtor does not have an equity in such property; and

---

condition such use, sale, or lease as is necessary to provide adequate protection of such interest.  This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362).

[17] Section 361 of the Bankruptcy Code describes certain ways in which a debtor can provide adequate protection, but does not define the term.

> § 361.  Adequate protection
>
> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by -
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such an entity of the indubitable equivalent of such entity's interest in such property.

9

>> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

The burden of proof on the issue of entitlement to stay relief (including lack of adequate protection) is on Movants in the first instance, and such proof must come in the form of evidence presented at the hearing.  As stated earlier, Movants presented the testimony of Messrs. Meizlish and Shapiro, entered nine exhibits into evidence, including monetary damage calculations for the operations of Food King and DT&T.  There is no dispute, by the Debtor's admissions, that the Debtor has ceased operations and has made no post-petition payments to Movants.  Except for Debtors' counsel's representations that the Debtor intends to assume leases under Section 365(b) and assign them under Section 365(f), no basis was stated by the Debtor for opposition to the Movants' claim for relief from the stay, and no evidence was presented.  The ability of a debtor to assume or assign a lease, however, does not mean that relief from the automatic stay ought not be granted.  See, e.g. In re Inn at Longshore, Inc., 32 B.R. 942, 945 (Bankr. D. Conn. 1983) (finding that no evidence was offered at the hearing on the motion for relief from stay that demonstrated the Inn would, or even could, pay the monthly rent).

The Court next looks at Section 365(d)(3) of the Bankruptcy Code, which governs executory contracts and unexpired leases.  This section provides that after the order for relief, the trustee or debtor-in-possession shall timely perform all the obligations under the unexpired lease or nonresidential real property until the lease is assumed or rejected.  The debtor's performance of its obligations under Section 365(d)(3) can comprise a component of adequate protection.  The purpose of Section 365(d) is "to ameliorate the immediate financial burden borne by lessors of nonresidential real property during the period in which trustees decided whether to assume a lease." In re P.J. Clarke's Restaurant Corp., 265 B.R. 392, 396-97 (Bankr. S.D.N.Y. 2001).  At a minimum,

then, adequate protection could exist if a debtor performed its obligations under its leases for the post-petition rent period, including rent, interest, and late fees.

The Debtor in this case, however, has paid nothing to Movants under the subleases since the filing of the petition, as established at the hearing, and the Debtor offered no post-petition payments.[18]  "The enactment of § 365(d)(3) has 'virtually eliminated any argument for measurement of the trustee's obligations by the value of the premises to the estate, and therefore requires payment of the full lease rent whether the space has greater or lesser market value or whether the trustee is making full or no use of the premises.'"  P.J. Clarke's Restaurant, 265 B.R. at 397.

The Court is cognizant of Movants' concerns.  Indeed, at the lift stay hearing, Global Express echoed many of Movants' concerns, including, in particular, the diminution in the value of locations resulting from the reduced customer traffic.  The Court is equally cognizant of the harms that may be suffered by the estate and other creditors if the stay is lifted and Movants are permitted to take steps to terminate their subleases with the Debtor.  Section 365(d)(3) and (d)(4) provide a way to reallocate the relative burdens imposed by a tenant's going dark by limiting the landlord's exposure and requiring the debtor to maintain post-petition obligations.  Section 365 evidences a policy favoring assumption and assignment.  "Such a policy will insure that potential valuable assets will not be lost by a Debtor who is reorganizing his affairs or liquidating his assets for distribution to creditors.  This policy parallels case law which disfavors forfeiture."  See In re Martin Paint Stores, 199 B.R. 258, 263 (Bankr. S.D.N.Y. 1996).

---

[18] Again, counsel for both the Debtor and Global Express stated in argument that the Debtor holds $500,000 in a debtor-in-possession bank account in which Global Express claims a security interest, but neither offered it as "adequate protection" payments to Movants, and both claim that they have no authority to do so.  Also, if Global Express' claim to a security interest in these funds is valid, the funds would constitute cash collateral of Global Express which could not be used absent Global Express' consent or a court order.  The Debtor, here, has filed no motion for use of cash collateral.

Balancing these competing concerns, tensions and policies, the Court concludes that stay relief should be granted to Movants. In this case, as the Court has noted several times, Movants appeared at their hearing with credible witnesses and documentary evidence sufficient to demonstrate "cause" for stay relief under Section 362(d). The Debtor has closed down, is the subject of a state "cease and desist" order, and is making no post-petition payments to Movants. Adequate protection has not been provided. In addition, Movants' senior officers have testified convincingly as to harm to their own businesses and pecuniary loss. Against this backdrop of proof, the Debtor offered absolutely no evidence at the hearing. The Debtor's senior officer did not appear. All that was offered by the Debtor was its counsel's representation that the Debtor was packaging its subleases for sale and marketing them and was close to a signed deal. No witness was produced to substantiate any of counsel's representations.

As the Court pointed out in the opening paragraphs of this Memorandum, the result in subsequent lift stay proceedings by other landlords may be different. In subsequent lift stay cases, the Debtor may be able to mount an evidentiary defense to a Section 362(d) action. Very soon after the hearing, the Debtor filed a proposed agreement with a prospective purchaser. The Court is also aware that the Debtor's subleases are part of a proposed auction sale under bidding procedures for which this Court's approval is sought.[19]

Movants here acted diligently to seek stay relief and put on sufficient proof at trial to carry their burden under Section 362(d) of the Bankruptcy Code, through presentation of witnesses and documentary evidence. The Debtor did not carry its burden or, indeed, present any evidence at all in opposition to the Motions. Accordingly, the Emergency Motions [26] and [32] of Food King and

---

[19] The Court is comforted by the inclusion of a notice provision advising prospective bidders that certain subleases are the subject of (lift stay) litigation and under advisement with the Court. Thus, prospective bidders have been on notice that the Food King and DT&T subleases could be removed from the package of propoerty to be bid upon.

12

DT&T must be granted. A separate Order will issue.[20]

cc: Debtor
   Alan Grochal, Esq.
   Marc Kivitz, Esq.
   Megan K. Mechak, Esq.
   David Musgrave, Esq.
   Zvi Guttman, Esq.
   U.S. Trustee

---

[20] Since the Court grants stay relief to Movant under Section 362 of the Bankruptcy Code, the Court need not address Movants' alternative arguments that is subleases with Debtor are not assumable as "personal service" contracts or due to default in the "continuous use" clauses.